IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

VINCENT WILSON,
    Plaintiff,

v.                                     Civil No. 3:22cv556 (DJN)

DEPUTY O'BRYANT, *et al.*,
    Defendants.

### MEMORANDUM OPINION

Vincent Wilson, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action alleging that Defendants Hill and Howerton[1] violated his rights under the Fourteenth Amendment.[2] By Memorandum Opinion and Order entered on September 27, 2023, the Court denied the Motion to Dismiss and granted Wilson's Motion for Leave to File an Amended Complaint. (ECF Nos. 42–43.) Therefore, the matter proceeds on the Amended Complaint (ECF No. 44) and Defendants' Motion for Summary Judgment (ECF No. 52). Defendants provided notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Wilson has filed several responses (ECF Nos. 58, 66–67), and his own Motion for Summary Judgment with supporting documents (ECF Nos. 68–70). For the reasons stated below, Wilson's

---

[1]     The remaining Defendants are Deputy Hill and Lieutenant Howerton ("Defendants") who work at the Arlington County Detention Facility. By Memorandum Order entered on April 10, 2023, the Court dismissed any claims against Defendant Arthur. (ECF No. 23, at 1–2.) By Memorandum Opinion and Order entered on September 5, 2023, the Court dismissed any claims against Defendant Daley. (ECF Nos. 38–39.) Wilson requested that the claims against Deputy O'Bryant be dismissed, and the Court granted that request on September 27, 2023. (ECF No. 43.)

[2]     The Court employs the pagination assigned by the CM/ECF docketing system. The Court also corrects the spelling, capitalization and punctuation in the quotations from the parties' submissions.

Motion for Summary Judgment (ECF No. 68) will be denied, Defendants' Motion for Summary

Judgment (ECF No. 52) will be granted, and the action will be dismissed.

## I.   WILSON'S CLAIMS

The claims Wilson raises in his Amended Complaint are not identical to those he raised

in his Particularized Complaint. The Court construes Wilson's amended claims to be as

follows:[3]

Claim One:   Defendants used excessive force against Wilson in violation of the Fourteenth Amendment. (ECF No. 44, at 5.)

Claim Two:   "The actions and failure of Defendant Hill in loosening up the cuffs or applying the cuffs in good faith so they wouldn't be tight, painful and injurious constitutes deliberate indifference to risk of harm in violation of . . . the Fourteenth Amendment." (*Id.*)

Claim Three:  Defendants' conduct amounted to the "tort of abuse of process," "constitute[d] the tort of assault and battery," "the tort of legal malpractice," "the tort of negligence," "the tort of personal injury," "the tort of product liability," "the tort of intentional infliction of emotional distress," and "constituted cruel and unusual punishment in violation of the Virginia Constitution." (*Id.* at 6–7.)

Claim Four:   Defendants failed to "immediately notify medical . . . constitute[s] deliberate indifference to [his] serious medical needs in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment." (*Id.* at 5.)[4]

Wilson requests monetary damages. (*Id.* at 7–8.) In their Motion for Summary Judgment,

Defendants argue that they did not subject Wilson to excessive force, were not deliberately

---

[3]     Wilson also names two dismissed Defendants, Deputy O'Bryant and Lt. Daley, in the Amended Complaint. However, since Wilson filed his Amended Complaint, the Court dismissed those two Defendants from the action. (*See* ECF Nos. 38–39, 40, 43.) Thus, as stated previously, the matter proceeds solely against Defendants Hill and Howerton.

[4]     Wilson drops his claim alleging that the failure to send him to medical staff amounts to a state law claim of negligence.

indifferent to Wilson's serious medical needs and are entitled to qualified immunity, and that Wilson's state law claims lack merit. (ECF No. 52, at 6.)

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324. When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does

3

not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of their Motion for Summary Judgment, Defendants submit the declaration of Deputy Hill (ECF No. 53-1), the declaration of Deputy O'Bryant (ECF No. 53-2), the declaration of Lt. Daley (ECF No. 54-1), the declaration of Lt. Howerton (ECF No. 53-4), and the declaration of Sgt. Alpos (ECF No. 53-5).

At this stage, the Court is tasked with assessing whether Wilson "has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993). As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. Wilson filed a variety of responses to the Motion for Summary Judgment and his own Declaration in support of his Motion for Summary Judgment. Nevertheless, many of his submissions, including his Amended Complaint, are not properly sworn to under penalty of perjury.[5] Wilson's Declarations (ECF No. 67, 70) are properly sworn;

---

[5]     For his Amended Complaint, Wilson states: "I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged upon information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct." (ECF No. 44, at 8.) Even in his sworn Affidavit and throughout his Declarations, Wilson alleges statements, "[u]pon information and belief." (*See, e.g.*, ECF No. 58, at 1.) Wilson's "verification" is virtually identical to one that this Court previously rejected in *Hogge v. Stephens*, 2011 WL 2161100, *2–3 (E.D. Va. June 1, 2011), and is substantially similar to one that the United States Court of Appeals for the Fourth Circuit found to be lacking in *Walker v. Tyler Cnty. Comm'n*, 11 F. App'x 270, 274 (4th Cir. 2001). Where a verification is made "upon information and belief," it "is insufficient for the purposes of opposing a motion for summary judgment because such verification avoids the possibility of perjury." *Price v. Rochford*, 947 F.2d 829, 832 (7th Cir. 1991); *see also Causey v. Balog*, 162 F.3d 795, 803 n.4 (4th Cir. 1998) ("Because [the court] cannot assess whether [the plaintiff] had first-hand knowledge of [the alleged] facts or whether he is competent to testify to them, [the

however, they comprise legal conclusions, statements made "upon information and belief," and other speculations that are not evidence.

In light of the foregoing submissions and principles, the following facts are established for the Motion for Summary Judgment. All permissible inferences are drawn in favor of Wilson.

### III.   UNDISPUTED FACTS

As a preliminary matter, the Court notes that Wilson has not litigated this matter in good faith. It is evident from his submissions that Wilson has purposely attempted to mislead the Court about the actions taken by the Defendants by leaving out large swaths of the facts where they do not fit into his narrative of the claim. As reflected below, the majority of the facts are undisputed. However, Wilson's version is woefully incomplete.

### A.   Facts Relating to Wilson's Excessive Force and Deliberate Indifference Claim

On July 13, 2022, Deputy Hill was assigned to the Transport Section of the Arlington County Sheriff's Office. (ECF No. 53-1 ¶ 3.) Lt. Daley, Corporal Scott and Deputy Hill were assigned to take Wilson to a medical appointment in Alexandria. (*Id.*) Wilson was being held at the jail for charges of first and second-degree murder. (ECF No. 54-1 ¶ 3.) At approximately 7:45 a.m., Lt. Daley and Deputy Hill went to the 11A Housing Unit, where Wilson was housed, and informed Wilson that they were there to transport him to his appointment and asked Wilson if he wanted to go. (ECF No. 53-1 ¶ 3; ECF No. 54-1 ¶ 3.) Wilson confirmed that he wanted to go, and Wilson got ready for his appointment. (ECF No. 53-1 ¶ 3.)

---

court] cannot consider them in [its summary judgment] review."). The Court notes, that even if it were to consider these submissions, they do not create a genuine material dispute of fact.

### 1.   Wilson Refuses to be Fully Handcuffed

Once Wilson was ready, Deputy Hill, joined by Deputy O'Bryant, who was assigned to 11A Housing Unit, went to Wilson's cell. (ECF No. 53-1 ¶ 4; ECF No. 53-2 ¶ 3.) Deputy O'Bryant opened the food slot, and Deputy Hill placed a large handcuff attached to a leather restraint belt on Wilson's right hand at his wrist. (ECF No. 53-1 ¶ 4; ECF No. 53-2 ¶ 4; ECF No. 54-1 ¶ 3.) Wilson indicated that the handcuff was too tight. (ECF No. 53-1 ¶ 4; ECF No. 53-2 ¶ 4; ECF No. 54-1 ¶ 3.) Deputy Hill then checked the handcuff by placing his index finger through the handcuff and Wilson's wrist, ensuring the handcuff was not too tight. (ECF No. 53-1 ¶ 4; ECF No. 53-2 ¶ 4; ECF No. 54-1 ¶ 3.) Wilson refused to give Deputy Hill his left arm to finish cuffing up because he still stated the handcuff was too tight. (ECF No. 53-1 ¶ 4; ECF No. 53-2 ¶ 4; ECF No. 54-1 ¶ 3.) Wilson then requested to speak to a Lieutenant. (ECF No. 53-1 ¶ 4; ECF No. 53-2 ¶ 4; ECF No. 54-1 ¶ 3.) Lt. Daley stepped forward and identified himself as a Lieutenant. (ECF No. 54-1 ¶ 3.)[6] Lt. Daley informed Wilson that if they did not put the handcuffs on, Wilson could not be transported to his appointment. (ECF No. 53-1 ¶ 4; ECF No. 53-2 ¶ 4.) Lt. Daley also checked the handcuffs using two fingers and informed Wilson that there was ample space, and that the handcuff would not be loosened any further. (ECF No. 54-1 ¶ 3.) Officers at some point removed the handcuff. (*See* ECF No. 53-1 ¶ 4.)[7]

Wilson then placed his arms into the food slot a second time, and Deputy Hill placed the handcuff on Wilson's right wrist again. (ECF No. 53-1 ¶ 4; ECF No. 53-2 ¶ 5.) Again, Wilson

---

[6]   Wilson indicates that he wanted to speak to the Lieutenant for the housing unit, but the officers refused to get him. (ECF No. 67 ¶¶ 9–10.)

[7]   Although neither Deputy Hill nor Deputy O'Bryant specifically state that they removed the handcuff, they both explain that they attempted to cuff Wilson a second time. (ECF No. 53-1 ¶ 4; ECF No. 53-2 ¶ 5.) Wilson does not dispute this fact.

stated the handcuff was too tight and demanded that the officers only lock the handcuff to one notch. (ECF No. 53-1 ¶ 4; ECF No. 53-2 ¶ 5.)[8] Deputy Hill checked the handcuff a final time, told Wilson that the handcuff was not too tight, and told Wilson that he could not put it on only one notch. (ECF No. 53-1 ¶ 4; ECF No. 53-2 ¶ 5.)

### 2.    First Use of Force:  Pulling on Restraint Belt

At that point, Wilson attempted to pull the handcuff and the restraint belt into his cell through the food slot. (ECF No. 53-1 ¶ 5; ECF No. 53-2 ¶ 5; ECF No. 54-1 ¶ 4.)[9] Deputies Hill and O'Bryant grabbed and maintained control of the restraint belt to keep Wilson from pulling the handcuffs and restraint belt into his cell. (ECF No. 53-1 ¶ 5; ECF No. 53-2 ¶ 5.)  The officers were concerned that if Wilson was able to pull the handcuffs and restraint belt into his cell, he could use the cuffs and restraint belt to hurt himself or another person. (ECF No. 53-1 ¶ 5.)

Deputy O'Bryant and Lt. Daley grabbed Wilson's arm and the rest of the restraint belt so they could attempt to remove the right handcuff. (ECF No. 53-1 ¶ 6; ECF No. 53-2 ¶ 5.)  Wilson continued resisting and tried to pull his arm, along with the handcuff and the restraint belt, back into the cell. (ECF No. 53-1 ¶ 6; ECF No. 53-2 ¶ 5.)  While trying to remove the handcuff from Wilson's right wrist, Deputy Hill and Deputy O'Bryant saw Wilson reach his left hand through the food slot and attempt to grab Deputy Hill's duty belt. (ECF No. 53-1 ¶ 6; ECF No. 53-2 ¶ 5.) Deputy Hill stepped back to prevent Wilson from grabbing his duty belt. (ECF No. 53-1 ¶ 6.)

---

[8]    Wilson contends that he asked if he can "loosen the cuffs up or do about one or two clicks." (ECF No. 67 ¶ 6.)

[9]    Wilson insists that he continued to back up in his cell "because [he] just wanted to speak to a higher authority." (ECF No. 67 ¶ 11.)

While Lt. Daley and Deputy O'Bryant maintained control of Wilson, Deputy Hill attempted to take the right handcuff off again. (ECF No. 53-1 ¶ 7; ECF No. 54-1 ¶ 4.) Wilson grabbed Deputy Hill's right wrist with his left hand and ripped the watch off his wrist breaking the silicone band. (ECF No. 53-1 ¶ 7; ECF No. 54-1 ¶ 4.) Deputy Hill then saw Wilson throw his watch into the cell toilet and flush the toilet. (ECF No. 53-1 ¶ 7.) Deputy Hill finally was able to remove the handcuff. (ECF No. 53-1 ¶ 7.)

Deputy O'Bryant called on the radio for all available escorts to respond to 11A Housing Unit. (ECF No. 53-1 ¶ 8; ECF No. 53-2 ¶ 5.) Sgt. Howerton, Zone Supervisor Sgt. Alpos and Deputy Tate responded. (ECF No. 53-1 ¶ 8; ECF No. 54-1 ¶ 4; ECF No. 53-4 ¶ 3; ECF No. 53-5 ¶ 3.)

### 3.    Second Use of Force:  Holding Wilson's Arm[10]

Sgt. Howerton arrived at the cell and observed Wilson with his right arm hanging out of the food slot, ignoring commands from Deputy Hill and Lt. Daley to give up the watch. (ECF No. 53-4 ¶ 3.) When Sgt. Howerton learned that Wilson had grabbed Deputy Hill's watch, he asked Wilson to give him the watch. Wilson then stated: "I flushed the watch down the toilet." (*Id.*) Sgt. Howerton asked Wilson to remove his arm from the food slot several times, but Wilson refused to comply. (*Id.* ¶ 4.) Sgt. Howerton secured Wilson's right arm by holding it to the cell door so Wilson could not attempt to assault anyone else. (*Id.*) Sgt. Howerton asked Deputy Tate to get the restraints so they could handcuff Wilson. (*Id.* ¶ 5.) Sgt. Howerton was able to convince Wilson to place his hands out of the food slot so he could apply handcuffs and a

---

[10]    The Court notes that neither Wilson nor Defendants identify two separate uses of force. The Court also does not believe that Wilson necessarily challenges this second use of force, because this action did not involve handcuffs which he claims injured him. However, because officers were able to remove the handcuffs and briefly disengage from Wilson, the Court considers these two separate uses of force.

tether so Wilson could be removed from his cell. (ECF No. 53-1 ¶ 8; 53-4 ¶¶ 4–5; ECF No. 53-5 ¶ 3.) Once Wilson was handcuffed by Sgt. Howerton and Deputy Tate, Sgt. Howerton held the restraint belt so that Deputy Tate could retrieve the tether. (ECF No. 53-5 ¶ 5.) Wilson complained that the other deputy put the handcuffs on too tight and claimed this bruised his wrist and forearm. (*Id.*) Full restraints were placed on Wilson. (*Id.* ¶ 6.) Deputy Tate secured the leg-irons and Sgt. Howerton secured the waistbelt. (*Id.* ¶ 6.)

Once Wilson was removed from the cell, Deputy Hill entered the cell and saw that his watch had not fully flushed and was able to retrieve the watch from the toilet. (ECF No. 53-1 ¶ 8; ECF No. 53-4 ¶ 6; ECF No. 53-5 ¶ 3.)

Wilson was then escorted out of the 11A Housing Unit to the elevator lobby and then to booking by Deputies Tate and Hill. (ECF No. 53-4 ¶ 6.) Lt. Daley notified Major Barrett, who came to booking to speak with Wilson. (ECF No. 54-1 ¶ 5.) Major J. Barrett attempted to convince Wilson to tone down his behavior so he could be taken to his medical appointment. (ECF No. 54-1 ¶ 5.) Lt. Daley could overhear a portion of the conversation, and heard Major Barrett respond to something Wilson said with: "So you are threatening my staff and they are trying to assist you with your medical care by taking you to your appointment?" (*Id.*)

After speaking with Wilson, Major Barrett asked Lt. Daley's opinion on whether Wilson should go to his appointment. (ECF No. 53-1 ¶ 9; ECF No. 54-1 ¶ 6.) Lt. Daley informed Major Barrett that it was not safe for Wilson outside the secure facility, because Wilson had already fought with staff, attempted to gain control of the restraints and assaulted Deputy Hill in the process. (*Id.*) Lt. Daley explained that this happened in a secure facility when staff attempted to put him in restraints for transport. (*Id.*) If Wilson were at a medical appointment at an outside facility, there was a possibility that medical personnel could ask for the restraints to removed.

9

(*Id.*) Lt. Daley also noted the seriousness of Wilson's charges, that Wilson's behavior is unpredictable and his transport information sheet showed numerous facility rule violations. (*Id.*) Lt. Daley recommended to Major Barrett that Wilson's future outside medical appointment transports be conducted by the Sheriff's Emergency Response Team ("SERT") due to the safety and security threat that Wilson posed to staff and the general public, including Wilson's behavior that day. (*Id.*) Major Barrett agreed with Lt. Daley's recommendation, and he instructed Lt. Daley to inform Captain Lutz that SERT involvement would be needed for any future transports for Wilson. (*Id.*)

Major Barrett decided to cancel Wilson's medical appointment for that day due to his behavior. (ECF No. 53-1 ¶ 9; ECF No. 54-1 ¶ 6; ECF No. 53-5 ¶ 4.)

### B.   Facts Related to Denial of Adequate Medical Care

Wilson was returned to 11A Housing Unit at 8:36 a.m. and was placed back in his cell without incident. (ECF No. 53-5 ¶¶ 4–5.) According to Sgt. Alpos, medical staff came to assess Wilson for any injuries and then cleared him, reporting no injuries. (ECF No. 53-1 ¶ 10; ECF No. 53-5 ¶¶ 5–6.) Wilson states that "Sgt. Alpos lied, medical wasn't called." (ECF No. 67 ¶ 16.) Wilson had "bruises, scratches, red marks, swellings, and it was blood on my arm maybe hand too, and I wasn't provided medical care." (*Id.* ¶ 18.) However, Wilson readily admits "upon information and belief" that he did receive medical care the next day and was given ointment. (*Id.* ¶ 19.)

## IV. ANALYSIS

### A.   Qualified Immunity

Although the record illustrates that Wilson's constitutional claims lack merit, and Defendants would also be entitled to summary judgment on that ground, the Court stayed

discovery at Defendants' request until such time that the Court ruled on their argument that they

are entitled to qualified immunity.  The Fourth Circuit recently explained the standard for

qualified immunity in this Circuit:

> "Qualified immunity protects government officials from civil liability and suit
> insofar as their conduct does not violate clearly established statutory or
> constitutional rights of which a reasonable person would have known." *Attkisson
> v. Holder*, 925 F.3d 606, 623 (4th Cir. 2019) (internal quotation marks omitted), *as
> amended* (June 10, 2019). "To overcome an official's claim of qualified immunity,
> the plaintiff must show: (1) that the official violated a statutory or constitutional
> right, and (2) that the right was clearly established at the time of the challenged
> conduct.  A court need not address those inquiries in sequence, but instead may
> exercise its sound discretion in deciding which issue to first address.  The official
> is entitled to qualified immunity if either prong is not satisfied." *Id.* (citations and
> internal quotation marks omitted).
>       "In the Fourth Circuit, we have a split burden of proof for the qualified-
> immunity defense.  The plaintiff bears the burden on the first [(constitutional right)]
> prong, and the officer bears the burden on the second [(clearly established)] prong."
> *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022).  In conducting the qualified-
> immunity analysis, we view the evidence in the light most favorable to [the
> plaintiff]. *See Aleman* [*v. City of Charlotte*], 80 F.4th [264] at 287 [(4th Cir. 2023)]
> (describing qualified-immunity analysis at the summary-judgment stage).

*Jones v. Solomon*, 90 F.4th 198, 207–08 (4th Cir. 2024) (fourth through sixth alterations added).

As discussed below, because Wilson fails to show that Defendants violated his constitutional

rights, the Court need not turn to the second prong of the inquiry.

### 1.       Excessive Force (Claim One)

#### a.       Standard for Excessive Force Claims

Under the Fourteenth Amendment standard, a detainee must demonstrate that a defendant

"inflicted unnecessary and wanton pain and suffering upon the detainee." *Carr v. Deeds*, 453

F.3d 593, 605 (4th Cir. 2006) (citations omitted) (internal quotation marks omitted), *abrogated

on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010).  A detainee may prevail by

"providing only objective evidence that the challenged governmental action is not rationally

related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (citations omitted).[11]

Factors a court may consider to determine whether force was objectively unreasonable may include:

> the relationship between the need for the use of force and the amount of force used; the extent of [the detainee's] injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the [detainee] was actively resisting.

*Id.* at 397 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Because "officers facing disturbances 'are often forced to make split-second judgments'. . . a court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer." *Id.* at 399 (citing *Graham*, 490 U.S. at 397). The Court must recognize that "agents of the state are permitted to exercise a certain degree of force in order to protect the interests of society." *Sawyer v. Asbury*, 537 F. App'x 283, 294 (4th Cir. 2013) (quoting *Justice v. Dennis*, 834 F.2d 380, 382 (4th Cir. 1987), *vacated on other grounds by* 490 U.S. 1087 (1989)). Thus, not every "push or shove, even if it may later seem unnecessary" rises to the level of a constitutional violation. *Orem v. Rephann*, 523 F.3d 442, 447 (4th Cir. 2008) (quoting *Graham*, 490 U.S. at 396), *abrogated on other grounds by Wilkins*, 559 U.S. 34. Consequently, the Court "must accord due deference to an officer's efforts to restrain a detainee when faced with a dynamic and potentially violent situation; otherwise, 'we would give encouragement to insubordination in an environment which is already volatile enough.'" *Scarbro v. New Hanover Cty.*, 374 F. App'x 366, 370 (4th Cir. 2010) (quoting *Grayson v. Peed*,

---

[11]     In *Kingsley*, the Supreme Court determined that the appropriate standard for the Fourteenth Amendment is "only that the officers' use of that force was *objectively* unreasonable," not that "the officers were *subjectively* aware that their use of force was unreasonable . . . ." 576 U.S. at 391.

195 F.3d 692, 696 (4th Cir. 1999)).  In addition, the determination of whether excessive force

was used must be made "from the perspective of a reasonable officer on the scene, including

what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 576 U.S. at

397.

On the record before the Court, Wilson has failed to demonstrate that Defendants

"inflicted unnecessary and wanton pain and suffering upon [him]." *Carr*, 453 F.3d at 605.  To

the contrary, the record establishes that Wilson created a serious security risk, and the application

of force was limited, measured and reasonable under the circumstances.  The record

demonstrates that Defendants applied force in a good-faith effort to restore discipline in light of

the security risk that Wilson created.

### b.    First Use of Force

Only Deputy Hill was involved in the first use of force as Sgt. Howerton had not yet

responded to the officers' calls to come to Wilson's cell.  First, the Court considers "the

relationship between the need for the use of force and the amount of force used." 576 U.S. at

397.  The record demonstrates that Wilson refused to be fully handcuffed because he believed

the cuff was too tight on his right hand.  Instead of complying with officers' requests to give

them his left hand, Wilson pulled his arm back into the cell with the handcuff still attached.

While Wilson contends that he was waiting for a different Lieutenant because he was not

satisfied with Lt. Daley, it is undisputed that Wilson continued to back up into his cell.  Given

these circumstances, the "need for the use of force" was obvious, immediate and ongoing.

*Kingsley*, 576 U.S. at 397.

Wilson's actions required officers to pull on the restraint belt, because allowing Wilson to

bring the handcuffs and restraint belt into his cell would pose a risk that he could use them as

13

weapons. The amount of force applied to Wilson was simply that necessary to maintain control of the belt to counteract Wilson pulling himself back into the cell. Any use of force immediately ended once the officers were able to remove the handcuff. In this instance, the "need for the use of force" was great, and the "amount of force used" was necessary, proportionate and appropriate in light of the circumstances. *Id.* The first *Kingsley* factor clearly cuts against Wilson's claim.

Second, the Court examines "the extent of [the detainee's] injury." *Id.* Despite Wilson's insistence that he was scratched and suffered from bruises and swelling, the undisputed evidence demonstrates that his injuries qualified as minor. Wilson himself indicates that, at most, he required an ointment. Moreover, on this record, any injuries that Wilson did suffer to his right wrist and arm could readily attributed to his own resistance to being cuffed and pulling the handcuffs and restraint belt into his cell, as opposed to anything Defendants may have done. Thus, this factor cuts against Wilson's claim.

Third, courts should consider "any effort made by the officer to temper or to limit the amount of force." *Id.* Officers asked Wilson to comply with their orders several times. It is disputed that Wilson ignored these commands and pulled himself and the handcuff into the cell. Simply put, Wilson refused to cooperate and escalated the situation. As such, the third factor weighs against Wilson's claim.

Finally, the Court must also consider "the severity of the security problem at issue," *id.*, and "the threat reasonably perceived by the officer, and whether the [detainee] was actively resisting." *Id.* Wilson was being held on first/second-degree murder charges. Wilson was also a known security risk and had caused problems in the jail. To go to his appointment in the medical facility, Wilson was well aware that he needed to be in restraints. Instead, Wilson refused to be cuffed, backed away from officers and attempted to pull the handcuffs and restraint belt into the

14

cell. Wilson was actively resisting being cuffed, and officers were afraid that he would be able to gain control of both the cuffs and the restraint belt and bring them into his cell to potentially use as a weapon. Under the circumstances, Wilson created a serious security risk, and any officer would have reasonably perceived a risk to their personal safety. Thus, Wilson fails to establish that Defendant Hill used excessive force in restraining him.

**c.      Second Use of Force**

With respect to the second use of force, little discussion is needed. Wilson had just refused to be cuffed and attempted to pull the handcuffs and restraint belt into his cell. When officers tried to remove the cuff, he grabbed at an officer's duty belt, grabbed Deputy Hill's wrist, broke Hill's watch and then flushed the watch down the toilet. Sgt. Howerton arrived at the cell and observed Wilson with his right arm hanging out of the food slot, ignoring commands from Deputy Hill and Lt. Daley to give up the watch. (ECF No. 53-4 ¶ 3.) When Sgt. Howerton learned that Wilson had grabbed Deputy Hill's watch, he asked Wilson to give him the watch, but Wilson indicated that he had flushed the watch. (*Id.*) Sgt. Howerton asked Wilson to remove his arm from the food slot several times, but Wilson refused to comply. (ECF No. 53-4 ¶ 4.) At that point, the force used by Sgt. Howerton was applied only to hold Wilson's arm against the door to keep Wilson from harming or assaulting anyone else. Sgt. Howerton then convinced Wilson to place his hands out of the food slot so he could apply handcuffs and a tether so Wilson could be removed from his cell. (ECF No. 53-1 ¶ 8; 53-4 ¶¶ 4–5; ECF No. 53-5 ¶ 3.)

At the point when Sgt. Howerton held Wilson's arm, that application of force was clearly needed to keep Wilson from harming anyone else, and the force was minimal. Sgt. Howerton limited the amount of force by holding Wilson's arm only until he could finally be restrained. After Wilson's active and escalating resistance to officers, Sgt. Howerton clearly perceived

15

Wilson as a serious security risk to the officers. Any use of force immediately ended once Wilson agreed to be fully cuffed. Moreover, Wilson's injuries were minimal. Wilson presented a serious security risk to officers, and the application of force was both limited and reasonable.

Wilson fails to demonstrate that he was subjected to excessive force under the Fourteenth Amendment. Thus, Defendants are also entitled to qualified immunity. Accordingly, Claim One lacks merit and will be DISMISSED.

### 2. Deliberate Indifference (Claims Two and Four)

#### a. Denial of Adequate Medical Care (Claim Four)

Once again, because Wilson is a "'pretrial detainee and not a convicted prisoner,' the Fourteenth Amendment, and not the Eighth Amendment, governs his claim[s]." *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021) (quoting *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988)). The Court first turns for Claim Four, because in the wake of *Kingsley*, the Fourth Circuit recently clarified what pretrial detainees must demonstrate with respect to claims alleging that jail officials failed to appropriately respond to their medical needs. *See Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023). Specifically, pretrial detainees must demonstrate:

> (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

*Id.* The Fourth Circuit explained:

> The objective test we adopt today differs from our prior subjective test in one respect only. The plaintiff no longer has to show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm. That showing remains sufficient, but it is no longer necessary. Now, it is sufficient that the plaintiff show that the defendant's action or inaction was, in *Kingsley*'s words, "objectively unreasonable," 576 U.S. at 397; that is, the plaintiff must show that

16

the defendant should have known of that condition and that risk, and acted accordingly. Or as the Supreme Court put it when describing civil recklessness in *Farmer*, it is enough that the plaintiff show that the defendant acted or failed to act "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known."

*Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).

In Claim Four, Wilson claims that Defendants' failure to "immediately notify medical . . . constitute[s] deliberate indifference to [his] serious medical needs in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment." (ECF No. 44, at 5.) As a preliminary matter, the Equal Protection Clause does not provide Wilson with any right to have Defendants appropriately respond to his medical needs, and any such claim is dismissed. Next, Wilson fails to show that Defendants' actions qualified as objectively unreasonable. Wilson fails to establish that Defendants should have known that he was suffering from a serious medical condition and failed to act to that known risk.

According to Sgt. Alpos, at some point after Wilson was returned to his cell, medical staff came to assess Wilson for any injuries and then cleared him. (ECF No. 53-1 ¶ 10; ECF No. 53-5 ¶ 5.) While Sgt. Alpos does not identify when this visit happened, medical staff did not report any injuries. (ECF No. 53-5 ¶ 6.) Wilson contends that he had "bruises, scratches, red marks, swelling, and it was blood on my arm, and I wasn't provided medical care." (ECF No. 67 ¶ 18.) Wilson states that "Sgt. Alpos lied, medical wasn't called." (ECF No. 67 ¶ 16.) However, Wilson readily admits "upon information and belief" that he did receive medical care the next day and received ointment. (ECF No. 67 ¶ 19.) Thus, the undisputed evidence shows that Wilson was provided medical care, perhaps just not as fast as he desired.

With respect to Sgt. Howerton, it appears his involvement ended when Wilson was taken from his cell to booking to talk to Major Barrett. Therefore, Wilson fails to show that Sgt.

17

Howerton's actions qualified as objectively unreasonable. Wilson fails to show that Sgt. Howerton should have known that Wilson was suffering from a serious medical condition and failed to act in the face of that known risk. *Short*, 87 F.4th at 61.

Presumably, Deputy Hill escorted Wilson back to his cell and could have called medical staff to examine Wilson. Wilson contends that he had scratches, bruising, swelling and blood on his right wrist. However, Wilson fails to demonstrate that those conditions "posed a substantial risk of serious harm" if left untreated. *Id.*; *see Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996) (observing that a prison medical staff's refusal to "dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue . . . does not violate the Constitution."). Indeed, the record establishes that when Wilson saw medical staff the following day, at most, he was given an ointment to use. Thus, Wilson fails to demonstrate that Deputy Hill, or to the extent Sgt. Howerton was involved, "failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Short*, 87 F.4th at 611 (citing *Farmer*, 511 U.S. at 836). In sum, Defendants' inaction did not qualify as objectively unreasonable. Wilson fails to establish that Defendants violated his rights under the Fourteenth Amendment. Moreover, Defendants are entitled to qualified immunity on this claim. Claim Four lacks merit and will be DISMISSED.

### b. Deliberate Indifference with Respect to Handcuffs (Claim Two)

In Claim Two, Wilson contends that "[t]he actions and failure of Defendant Hill in loosening up the cuffs or applying the cuffs in good faith so they wouldn't be tight, painful and injurious constitutes deliberate indifference to risk of harm in violation of . . . the Fourteenth Amendment." (ECF No. 44, at 5.) While Wilson characterizes this claim as for "deliberate indifference," the Court notes that the alleged use of excessively tight handcuffs may be

18

reviewed as an excessive force claim or a claim challenging conditions of confinement. *Majette v. Geo Group, Inc.*, 3:07cv591, 2011 WL 166289, at *5 (E.D. Va. Jan. 18, 2011). However, because Wilson specifically identified this as a claim of deliberate indifference, the Court reviews it as a claim challenging his conditions.[12] Accordingly, Wilson must show that Deputy Hill's action or inaction with respect to the placement of the handcuff qualified as "objectively unreasonable." *Kingsley*, 576 U.S. at 397. Wilson must demonstrate that Deputy Hill "acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Short*, 87 F.4th at 611 (citing *Farmer*, 511 U.S. at 836.)

Wilson fails to demonstrate that the act of placing one handcuff on his wrist amounts to deliberate indifference to an unjustifiably high risk of harm. Wilson states that "Defendant Hill applied the cuffs in bad faith which were too tight." (ECF No. 67 ¶.) However, Wilson fails to provide specific facts that supports this assertion. Wilson's conclusory assertion does not establish that the handcuff was too tight. *See United States v. Roane*, 378 F.3d 382, 400–1 (4th Cir. 2004) (concluding that "[a]iry generalities [and] conclusory assertions . . . [do] not suffice to stave off summary judgment . . . ." Rather, the record reflects that Deputy Hill fit one finger under the cuff and Lt. Daley later fit two fingers under the cuff, ensuring that the cuff was not too tight on Wilson's wrist. (ECF No. 53-1 ¶ 4; ECF No. 54-1 ¶ 3.) Thus, it is undisputed that the handcuff was not too tight. Simply put, there was no "unjustifiably high risk of harm" that Deputy Hill knew or should have known about. *Short*, 87 F.4th at 611 (citing *Farmer*, 511 U.S.

---

[12]     Nevertheless, it is abundantly clear that under either standard, Wilson's claim lacks merit. Deputy Hill did not subject Wilson to excessive force because after Wilson complained about the cuff being two tight, two different officers checked the handcuff and were able to place fingers between the cuff and Wilson's wrist. (ECF No. 53-1 ¶ 4; ECF No. 54-1 ¶ 3.) Thus, the record demonstrates that the cuff was not placed on Wilson in an excessively tight manner. Wilson fails to demonstrate that Deputy Hill "inflicted unnecessary and wanton pain and suffering upon [him]," through the placement of the handcuff. *Carr*, 453 F.3d at 605.

19

at 836.)[13]  Wilson fails to demonstrate that Deputy Hill's action in placing one handcuff on his wrist and refusing to loosen it was objectively unreasonable.  Accordingly, Wilson fails to establish that Deputy Hill violated his rights under the Fourteenth Amendment.  Deputy Hill is also entitled to qualified immunity on this claim.  In sum, Claim Two lacks merit and will be DISMISSED.

### 3.   State Law Claims (Claim Three)

"Although a federal court has discretion to assert pendent jurisdiction over state claims even when no federal claims remain, certainly[ ] if the federal claims are dismissed before trial . . . the state claims should be dismissed without prejudice."  *Alexandria Resident Council, Inc. v. Alexandria Redevelopment & Hous. Auth.*, 11 F. App'x 283, 287 (4th Cir. 2001).  Accordingly, Wilson's many state law claims will be DISMISSED WITHOUT PREJUDICE.

## V.   THE ACTION IS FRIVOLOUS AND MALICIOUS

Under the Prison Litigation Reform Act ("PLRA"), this Court must dismiss a "case at any time if the [C]ourt determines that" the action "is frivolous or malicious." 28 U.S.C. § 1915(e)(2)(B)(i).  The first standard includes claims based upon "'an indisputably meritless legal theory,'" or claims where the "'factual contentions are clearly baseless.'"  *Clay v. Yates*, 809 F.Supp. 417, 427 (E.D.Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).  This provision applies to dismissal at the summary judgment stage.  *Blakely v. Wards*, 701 F.3d 995, 1001 (4th Cir. 2012).  The record reflects that the factual contentions in the present action that Defendants used excessive force against him or were deliberately indifferent to a serious risk of harm "are clearly baseless."  *Id.* (quoting *Neitzke*, 490 U.S. at 327); *see Blakely*, 701 F.3d at

---

[13]   In addition, Wilson was also not harmed or injured simply by the placement of a handcuff on his wrist.  Rather, the record clearly demonstrates that any injury that Wilson suffered stemmed from his acts of resistance to the officers' commands not to continue to pull the handcuffs and restraint belt into the cell.

1000 n.2 ("Making an [Americans with Disabilities Act] claim without being disabled surely

supports a frivolity determination and certainly supported the district court's decision that that

dismissal counted as a strike."). Thus, the action is factually frivolous pursuant to

§ 1915A(b)(1).

With respect to the second standard, or the maliciousness of an action, this Court has

observed that:

> A litigant may be deemed to act maliciously if his actions "[i]mport a wish to vex,
> annoy, or injure another, or an intent to do a wrongful act, and may consist in direct
> intention to injure, or in reckless disregard of another's rights." BLACK'S LAW
> DICTIONARY, Special Fifth Ed. at 863 (1981). Therefore, "the court must assess
> the character of the allegations insofar as they indicate a motive on the part of the
> plaintiff to merely harass or vex the defendants rather than to seek redress for a
> legitimate legal claim." *Daves v. Scranton*, 66 F.R.D. 5, 7 (E.D. Pa. 1975).

*Cain v. Com. of Va.*, 982 F. Supp. 1132, 1136 (E.D. Va. 1997). Further, "[t]he courts have long

recognized that inmate complaints against state officials are a particularly fertile arena for

frivolous and malicious litigation." *Id.* (citing *Daye v. Bounds*, 509 F.2d 66, 68 (4th Cir. 1975)).

This is true, in part, because incarcerated litigants "possess both time and dissatisfactions in

abundance." *Cochran v. Morris*, 73 F.3d 1310, 1316 (4th Cir. 1996). Furthermore, in assessing

whether an action qualifies as malicious, the Court's review is not limited to the current

complaint but is also guided by a plaintiff's past litigious conduct. *Id.* at 1316–17.

Here, Wilson has filed scores of civil actions in this Court (and in other courts), harassing

individuals who are charged with maintaining his ongoing detention. Indeed, Wilson has

amassed more than three cases dismissed under 28 U.S.C. § 1915. Given the circumstances and

based on Wilson's purposeful omission of relevant, material and dispositive facts in this case, the

Court concludes that Wilson has once again initiated the current lawsuit in bad faith, and to

harass and inconvenience Defendants. Accordingly, the Court will also dismiss the action as

MALICIOUS pursuant to § 1915A(b)(1).

## VI.    CONCLUSION

Defendants' Motion for Summary Judgment (ECF No. 52) will be GRANTED.  Wilson's Motion for Summary Judgment will be DENIED (ECF No. 68), because he has not established any entitlement to relief.  Wilson's constitutional claims will be DISMISSED.  The state law claims will be DISMISSED WITHOUT PREJUDICE.  The Clerk will be DIRECTED to note the disposition of the action for the purposes of 28 U.S.C. § 1915(g).  The action will be DISMISSED.

Let the Clerk file a copy of this Memorandum Opinion electronically and send a copy to Wilson.

An appropriate Final Order shall issue.

/s/

David J. Novak
United States District Judge

Richmond, Virginia
Dated: April 18, 2024